## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-22582-CIV-ALTMAN

**EDUARDO C. RAVELO**,

      *Petitioner,*

*v.*

**RICKY D. DIXON, SECRETARY,**
**FLORIDA DEPARTMENT OF CORRECTIONS**,

      *Respondent.*

_____/

### ORDER

    Our Petitioner, Eduardo C. Ravelo, was convicted and sentenced in state court on charges of defrauding an elderly victim. *See* Petition [ECF No. 1] at 1; Amended Information [ECF No. 25-1] at 300–07. He now challenges his conviction and sentence under 28 U.S.C. § 2254. After careful review, we **DISMISS in PART** and **DENY in PART** Ravelo's Petition.

### THE FACTS

    The State of Florida charged Ravelo by Information with six crimes: first-degree grand theft (Count 1); theft of $50,000 or more from an elderly person (Count 2); fraudulent use of personal identification information (Count 3); abuse of an elderly person (Count 4); unlawful use of a two-way communications device (Count 5); and laundering $100,000 or more (Count 6). *See* Amended Information [ECF No. 25-1] at 300–07. The State alleged that Ravelo, who was one of the victim's caretakers, "took advantage of the fact that [the victim, Irene Boyansky] became legally blind, took out an American Express card [in her name] . . . and cashed a large number of checks from her account, depositing some of the checks and using some of the cash." Direct Appeal Initial Brief [ECF No. 25-1] at 86. On May 5, 2016, a jury found Ravelo guilty of Counts 1, 2, 3, 5, and 6 of the Amended Information, but acquitted him on Count 4. *See* Verdict [ECF No. 25-1] at 59–62.

The trial court sentenced Ravelo to seventeen years in prison—with a mandatory minimum term of ten years. *See* Judgment and Sentencing Orders [ECF No. 25-1] at 64–72. Ravelo appealed to the Third DCA and raised the following four arguments: (1) "[t]he trial court erred when it allowed hearsay testimony through Detective Gonzale[s] that include[d] his opinion about the strength of the case, the completeness of the investigation, [and] mentioned information obtained from [a] non-testifying witness"; (2) "[t]he trial court erred when it denied the motion to strike the [venire] panel on the basis of the erroneous instruction or comment made by Judge Newman during his welcome speech to the prospective jurors"; (3) the trial court erred by "impermissibly shifting the burden when it asked the Detective whether he had 'all the evidence from all sides'"; and (4) "[t]he trial court committed reversible error when it allowed the introduction of Mr. Ravelo's confession where there was insufficient proof of corpus delicti." Direct Appeal Initial Brief [ECF No. 25-1] at 102–03. On July 5, 2018, the Third DCA summarily affirmed the trial court in an unwritten opinion. *See Ravelo v. State*, 251 So. 3d 116, 116 (Fla. 3d DCA 2018).

On July 1, 2019, Ravelo, through counsel, filed a Motion for Postconviction Relief under Fla. R. Crim. P. 3.850, advancing the following four claims of ineffective assistance of counsel: (1) counsel was ineffective for failing to "consult, show, or share with the defendant the discovery received prior to trial," Postconviction Motion [ECF No. 25-1] at 186; (2) counsel was ineffective for "fail[ing] to enter a contemporaneous objection, and thus properly preserve for appeal," certain "objectionable" portions of Detective Gonzales's testimony, *id.* at 187–88; (3) counsel was ineffective when he "failed to enter timely trial objections to the State's violation of Defendant's right to confront the witness against him," *id.* at 189; and (4) Ravelo's "decision not to testify was not a knowing and intelligent waiver" because trial counsel failed to provide Ravelo with a complete account of the evidence against him, *id.* at 190–91. On November 8, 2019, the state postconviction court denied all four claims on their merits. *See* Order Denying Postconviction Motion [ECF No. 25-1] at 198–211.

Ravelo appealed the denial of his Postconviction Motion to the Third DCA, arguing that the state postconviction court "erred in summarily denying" the first, third, and fourth claims in his Postconviction Motion. *See* Postconviction Initial Brief [ECF No. 25-1] at 224. The Third DCA affirmed the state postconviction court in an unwritten decision on August 12, 2020, *see Ravelo v. State*, 303 So. 3d 539, 539 (Fla. 3d DCA 2020), and issued its mandate on September 2, 2020, *see* Postconviction Appeal Docket [ECF No. 25-1] at 214.

Ravelo, now proceeding *pro se*, filed this Petition on July 15, 2021.[1] *See* Petition at 18. On December 23, 2021, we *sua sponte* dismissed the Petition as untimely, finding that more than one year of untolled time had elapsed since Ravelo's conviction became final. *See* Order Dismissing Petition [ECF No. 5] at 6 ("Ravelo thus had 108 days from September 2, 2020 (or until December 21, 2020) to file this Petition. That's because 108 days is what was left of his 365-day window once we deduct the 257 un-tolled days that had already passed by the time he filed his 3.850 motion."). Ravelo responded with a "Motion to Reopen this Action" under FED. R. CIV. P. 59(e), contending that he had "hand delivered [a Rule 3.800(a) motion[2]] to prison officials for mailing back on October 20, 2020," which meant that his time to file a § 2254 petition had been tolled for longer than we had first calculated. *See* Motion to Reopen [ECF No. 7] at 3; *see also* Rule 3.800(a) Motion [ECF No. 25-1] at 288–89.

We referred the matter to U.S. Magistrate Judge Lisette M. Reid, *see* Magistrate Referral [ECF No. 14], who found that Ravelo had "mailed his 3.800(a) motion on October 20, 2020," which "tolled

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).
[2] Under FLA. R. CRIM. P. 3.800(a), a criminal defendant can move "at any time [to] correct an illegal sentence imposed by [the trial court.]" A "motion to correct an illegal sentence filed pursuant to Rule 3.800(a)" is an "application for State post-conviction or other collateral review," which tolls the "one-year limitations period for filing a § 2254 petition[.]" *Hall v. Sec'y, Dep't of Corr.*, 921 F.3d 983, 986–87 (11th Cir. 2019).

3

the one-year statute of limitations" until the state postconviction court denied the motion on June 29, 2021, *Ravelo v. Dep't of Corr.*, 2022 WL 1525425, at *3 (S.D. Fla. Apr. 28, 2022) (Reid, Mag. J.); *see also* Order Denying Rule 3.800(a) Motion [ECF No. 25-1] at 291–93. Because Magistrate Judge Reid found that "Petitioner had until August 30, 2021, to file his Petition," she recommended that we grant his Motion to Reopen. *Ravelo*, 2022 WL 1525425, at *3 (footnote omitted). Agreeing with Magistrate Judge Reid's reasoning, we adopted in full her Report and Recommendation, found the Petition timely, and reopened the case. *See Ravelo v. Dixon*, 2022 WL 1522071, at *1 (S.D. Fla. May 13, 2022) (Altman, J.). This Order follows.

## THE LAW

### I.     The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States

Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)). "[E]ven if a petitioner successfully carries his burden under § 2254(e)(1)—showing by clear and convincing evidence that a particular state-court factual determination was wrong—he does not necessarily meet his burden under § 2254(d)(2): Even if the

state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) (quoting 28 U.S.C. § 2254(d)(2)). Indeed, habeas relief is not warranted "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Ibid.* (cleaned up).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief,

a court must find that the petition has cleared both tests." *Id.* at 1524; *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II.    AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). But this limitations defense is waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may express its intent to "waive the limitations bar").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure— prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the

claim." *Ibid.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). A habeas petitioner can establish "cause and prejudice" if (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the state court," and (2) "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The petitioner bears the burden of establishing that one of these exceptions to the procedural-default rule applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)).

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State,

through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

### III.   Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial counsel and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

## ANALYSIS

Ravelo advances eight grounds for relief: (1) that "the trial court improperly allowed the state to introduce hearsay evidence through Detective Gonzale[s]," Petition at 4; (2) that the trial court erred when it "denied Petitioner's motion to strike the jury panel," *id.* at 7; (3) that the trial court impermissibly allowed the State to shift the burden of proof when it questioned "the lead detective regarding the fact that he had 'all the evidence from all sides,'" *id.* at 9; (4) that the trial court erred when it "allowed the introduction of the confession as there was insufficient evidence under the corpus delicti rule," *id.* at 10; (5) that trial counsel was ineffective for failing "to consult, show or share with the defendant the discovery received prior to trial," *id.* at 11; (6) that trial counsel was ineffective for failing to "enter timely objections," *id.* at 13; (7) that trial counsel was ineffective when he failed to object "to the State's violation of Defendant's right to confront the witness against him," *id.* at 15; and (8) that trial "counsel's failure to share and review with Petitioner the financial information received prior to April 27, 2016" led Ravelo to waive his right to testify, *id.* at 16.

The Respondent maintains that each of these grounds (with the exception of one subclaim in Ground One) is "unexhausted and procedurally defaulted" and must be dismissed. *See generally* Response to Order to Show Cause ("Response") [ECF No. 24] at 17–52. In his Reply, Ravelo focuses almost exclusively on his view that his claims have been fully exhausted and should be reviewed on the merits. *See generally* Reply to State's Response ("Reply") [ECF No. 30] at 1–10. Although we find that Ravelo has properly exhausted *some* (though not all) of his claims, we ultimately conclude that even the exhausted claims must be denied on the merits.

## I.      The Unexhausted Grounds

Exhaustion "has two essential requirements": (1) "a federal claim must be fairly presented to the state courts"; and (2) the petitioner "must take his claim to the state's highest court, either on direct appeal or collateral review." *Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) (cleaned up). The Respondent thinks that all eight of Ravelo's claims are unexhausted. Starting with Grounds One through Four, the Respondent says that, in advancing these claims on direct appeal to the Third DCA, Ravelo relied (with one exception)[3] only on "state law." *See* Response at 22, 25, 30, 34, 38. As a result, the Respondent says, Ravelo failed to "fairly present" the federal nature of these claims to the state courts. *See ibid.* Pushing back, Ravelo insists that "Grounds One, Two, Three and Four are properly exhausted when considering the initial brief on direct appeal relied upon state cases employing federal constitutional analysis[.]" Reply at 1 (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)).

With respect to Grounds Five through Eight, the Respondent contends that Ravelo failed to present these claims to "the state's highest court." Response at 40 ("Petitioner raised an ineffective assistance of counsel claim in his Rule 3.850 motion. On appeal, he raised a claim of trial court error for failing to grant him an evidentiary hearing. . . . Because he failed to present this claim as an ineffective assistance of counsel claim with the district court, his claim is unexhausted and procedurally defaulted."). Here, again, Ravelo resists, arguing that he "specifically alleged in his 3.850 motion that defense counsel was ineffective[.]" Reply at 6–7.

After careful review, we agree with Ravelo that he's properly exhausted Grounds Three, Five, Seven, and Eight. We'll thus review these four claims on the merits. By contrast, we agree with the Respondent that Grounds Two and Six are unexhausted and procedurally defaulted—and that

---

[3] As we'll soon see, the Respondent concedes that Ravelo has fully exhausted a part of Ground One. *See infra* § I.A.

Ground Four isn't cognizable in a § 2254 petition. That, of course, leaves Ground One—only part of which has been exhausted. We'll start there.

### A. Ground One

In Ground One, Ravelo submits that Detective Gonzales's testimony violated his constitutional rights in three ways: (1) The testimony violated his rights under the Confrontation Clause because "[t]he State introduced a direct hearsay quote as to an element of the offense from a non-testifying witness," Petition at 5; (2) the testimony violated his Confrontation Clause rights a second time when the State "introduce[d] accusatory information received from an undisclosed source," *id.* at 6; and (3) the testimony unfairly prejudiced Ravelo's defense because "[t]he State was allowed to introduce irrelevant details of the investigation," *ibid.* The Respondent concedes that, in raising the first of these subclaims on direct appeal, Ravelo specifically cited the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004)—and that, as a result, this first subclaim has been exhausted. *See* Response at 18 ("Petitioner raised this claim under [*Crawford*], in his direct appeal. This claim is exhausted."). In the Respondent's view, however, the second and third subclaims—when Ravelo raised them on direct appeal—"did not present a federal constitutional argument." *Id.* at 22.

Although all three subclaims are in some respects interrelated, we agree with the Respondent that only the first subclaim "fairly presented" a federal claim to the Third DCA. In that first subclaim, after all, Ravelo expressly cited *both* the Confrontation Clause *and* the Supreme Court's decision in *Crawford. See* Direct Appeal Initial Brief [ECF No. 25-1] at 107 ("Mrs. Boyansky's statement given to Detective Gonzales during his investigation were [sic] testimonial and, thus, were [sic] subject to the requirements of the confrontation clause, where, objectively viewed, the primary purpose of this police interrogation was to investigate a possible crime involving past conduct. . . . In *Crawford v. Washington*[,] the Supreme Court of the United States held that [the Confrontation Clause] bars [the] admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and

the defendant [had] a prior opportunity for cross-examination." (cleaned up)); *accord Crawford*, 541 U.S. at 68 ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.").

It's true that, in his direct-appeal brief, Ravelo's second and third subclaims obliquely referenced a criminal defendant's general right to confront witnesses. *See, e.g.*, Direct Appeal Initial Brief [ECF No. 25-1] at 109 ("Mr. Ravelo was denied his right to confront the witnesses who told the officer that Mr. Ravelo bought the items."); *id.* at 112 ("[T]he detective's opinion of how extensive his investigation was or how strong the evidence was [is] more prejudicial than probative, it was based on rank hearsay, and introduced testimony from non-testifying witnesses."). But, unlike the first subclaim, these latter two subclaims didn't cite the Sixth Amendment's Confrontation Clause and made no reference either to *Crawford* or its progeny. Instead, these two subclaims relied *exclusively* on state evidentiary rules—*e.g.*, the rules against hearsay and the admission of prejudicial testimony. *See id.* at 110 ("The Florida Supreme [Court] has repeatedly concluded that when an out-of-court statement of a non-testifying witness, which provides evidence of the defendant's guilt, is admitted to show a logical sequence of events regarding the investigation, its probative value is outweighed by its prejudicial effect, and therefore, [is] error." (citing *Wilding v. State*, 674 So. 2d 114, 119 (Fla. 1996))); *see also ibid.* ("The details that were presented [by Detective Gonzales] did not 'show the logical sequence of events in the case.' The details were wholesomely [sic] irrelevant and highly prejudicial. The probative value—if any—was clearly outweighed by the prejudicial effect, particularly as in a case such as this, where the issue was consent and knowledge." (citing *Keen v. State*, 775 So. 2d 263, 272 (Fla. 2000))); *id.* at 112 ("The Court failed to analyze the statutory factors on legal relevance under [FLA. STAT. § 90.403].""). A "reasonable reader" would therefore understand these subclaims as advancing arguments under state, not federal, law. *See Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004) ("[T]o exhaust a claim, we simply require that petitioners present their claims to the state courts such that a

reasonable reader would understand each claim's particular legal basis and specific factual foundation."). And (it probably goes without saying) a claim that's premised on state evidence law isn't cognizable under § 2254. *See Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983) ("A state evidentiary violation in and of itself does not support habeas corpus relief.").

Trying to parry this conclusion, Ravelo relies on a case from the Sixth Circuit—*Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006)—and argues that Ground One's second and third subclaims were properly exhausted "considering the initial brief on direct appeal relied upon state cases employing federal constitutional analysis, or phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right[.]" Reply at 1 (citing *Williams*, 460 F.3d at 806). But *Williams* isn't binding on us. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) ("Under the established federal legal system the decisions of one circuit are not binding on other circuits."). And the Eleventh Circuit (our Circuit) has made clear that "referring to a 'constitutional right of confrontation of witnesses' is *not a sufficient reference to a federal claim*[.]" *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) (emphasis added). That's because, "in addition to the Sixth Amendment right of confrontation guaranteed by the U.S. Constitution, the Florida Constitution also guarantees a right of confrontation." *Ibid.*; *see also* FLA. CONST. art. I, § 16(a) ("[The accused] shall have the right . . . to confront at trial adverse witnesses[.]"). In our Circuit, then, "a petitioner with a claim that could arise under state or federal law must *clearly indicate* to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (emphasis added); *see also id.* at 457 ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."); *Kelley*, 377 F.3d at 1344 ("The petitioner must present his claims to the state courts such that they are permitted 'the opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim.'" (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971))).

As we've said, however, Ravelo's second and third subclaims—as they appeared in his brief to the Third DCA—didn't mention the U.S. Constitution or any federal constitutional cases at all. They, instead, relied on a specific Florida evidentiary rule prohibiting the use of "an out-of-court statement of a non-testifying witness . . . to show a logical sequence of events regarding the [criminal] investigation." Direct Appeal Initial Brief [ECF No. 25-1] at 110. And (notably), in asserting these subclaims to the Third DCA, Ravelo cited only state-law cases and state-law rules. *See id.* at 110 (citing *Wilding*, 674 So. 2d at 119); *ibid.* (citing *Keen*, 775 So. 2d at 272); *id.* at 112 (citing FLA. STAT. § 90.403). In similar circumstances, the Eleventh Circuit has found the federal claim unexhausted. *See McNair*, 416 F.3d at 1304 ("McNair never cited any United States Supreme Court or federal appellate court case dealing with extraneous evidence, nor did he mention the presumption of prejudice that arises under federal law when jurors consider such evidence. Instead, he relied on state law opinions to argue a state law claim under a state law standard[.]" (cleaned up)).

We therefore agree with the Respondent that, of the three subclaims in Ground One, only the first has been properly exhausted.

### B.  Ground Two

Ground Two alleges that the trial court violated Ravelo's Sixth and Fourteenth Amendment rights when it failed "to grant Petitioner's motion to strike the panel result[ing] in Petitioner being tried by a jury that had erroneously been instructed[.]" Petition at 7. Here, Ravelo specifically accuses the trial judge of revealing to the jury his own "opinion as to the weight of the case of Petitioner [sic] prior to the jurors being selected." *Id.* at 8. As the Respondent notes (*see* Response at 30), however, Ravelo never presented the federal nature of this claim in state court. Instead, in his direct appeal to the Third DCA, Ravelo cited *exclusively* to state law for the proposition that the trial judge's "'comment[s] to the jury upon the weight of the evidence, the credibility of the witness, or the guilt [of] the accused'" violated his *state-law* right to a "fair and impartial jury." Direct Appeal Initial Brief

[ECF No. 25-1] at 115 (emphasis added) (quoting 1 Charles W. Ehrhardt, Ehrhardt's Florida Evidence § 106.1 (2017 ed.)); *id.* at 116 ("[T]he court did not conduct an individual and sequestered examination of each individual perspective [sic] juror in order [to] determine the influence of the wrong legal statements, as should have taken place." (citing *Jackson v. State*, 729 So. 2d 947, 951 (Fla. 1st DCA 1998))). As we've highlighted, a habeas petitioner doesn't properly exhaust the federal nature of his claim when he "relie[s] on state law opinions to argue a state law claim under a state law standard[.]" *McNair*, 416 F.3d at 1304.

In his Reply, Ravelo insists that his direct-appeal citations to state-law decisions—like *Richardson v. State*, 666 So. 2d 223 (Fla. 2d DCA 1995), and *Jackson v. State*, 729 So. 2d 947 (Fla. 1st DCA 1998)—were sufficient to exhaust his *federal* claim because they reference "a constitutional right to trial by a fair and impartial jury." Reply at 3. Two problems with this. *One*, the Eleventh Circuit has held that "a petitioner with a claim that could arise under state or federal law must *clearly indicate* to the state courts that he intends to bring a federal claim." *Preston*, 785 F.3d at 458 (emphasis added). *Two*, the Florida cases Ravelo cites *expressly* relied on the *Florida* Constitution and the *Florida* Rules—not the U.S. Constitution or the Federal Rules. *See, e.g.*, *Richardson*, 666 So. 2d at 224 ("Under article I, section 16, of the Florida Constitution, and Florida Rule of Criminal Procedure 3.251, an accused has the right to trial by an impartial jury."); *Jackson*, 729 So. 2d at 951 ("[Jackson] was deprived of [the] right [to an impartial jury] because of the possibility that the jury panel was unfairly prejudiced by virtue of their knowledge of his arrest for other crimes." (citing *Wilding*, 427 So. 2d at 1069–70)). Since Ravelo didn't advance the federal nature of Ground Two in state court, that claim is unexhausted.

## C. Ground Three

In Ground Three, Ravelo claims that his due-process rights were violated when Detective Gonzales testified that he heard "all the evidence from all sides." Petition at 9. Here, we disagree with the Respondent's view that Ravelo only "raised this claim in his direct appeal *under state law*." Response

at 34 (emphasis added). Although Ravelo's state-court claim relied on state law *in part*, it also unambiguously referenced the Fourteenth Amendment's Due Process Clause. *See* Direct Appeal Initial Brief [ECF No. 25-1] at 117 ("The State's questioning of the lead detective as to the fact that he had 'all the evidence from all sides' constituted impermissible burden shifting testimony which violates the due process clause and the United States Constitution."). While not all citations to the U.S. Constitution are created equal, we think Ravelo's argument—that Detective Gonzales's burden-shifting testimony violated his due-process rights under the Fourteenth Amendment—was sufficient to "alert[ ] the [state] court to the alleged federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 33 (2004); *see also Hall v. Kelso*, 892 F.2d 1541, 1544 (11th Cir. 1990) (holding that "burden-shifting . . . may violate the due process clause protection"). We'll therefore review Ground Three on the merits.

### D. Ground Four

In Ground Four, Ravelo claims that his due-process rights were violated when "the trial court allowed the introduction of [Ravelo's] confession as there was insufficient evidence under the corpus delicti rule." Petition at 10. The Respondent counters, as it did with Grounds Two and Three, that Ravelo failed to exhaust the federal nature of Ground Four in state court. *See* Response at 38. It also asks us to deny Ground Four on the merits because the corpus delicti rule is a matter of "pure state law [that is] generally not cognizable in a federal habeas corpus action." *Ibid.* (quoting *Culver v. Jones*, 2018 WL 11014031, at *4 (S.D. Fla. Mar. 9, 2018) (White, Mag. J.), *report and recommendation adopted*, 2018 WL 11014034 (S.D. Fla. Apr. 12, 2018) (Marra, J.)).

In our view, Ground Four asserts a state-law claim that isn't cognizable under § 2254. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is currently in custody *in violation of the Constitution or laws or treaties of the United States*." (emphasis added)). "Corpus delicti"—Latin for "body of the crime"—is an old common law doctrine that requires the prosecutor,

before the defendant's confession can be admitted, to "prov[e] by substantial evidence that a crime was committed[.]" *State v. Allen*, 335 So. 2d 823, 824 (Fla. 1976); *see also J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1998) ("[T]he State cannot offer into evidence an admission against interest to prove an element of the charged offense in the absence of an independently established corpus delicti."). Florida is one of only a very few American jurisdictions to still apply this rule—though its version differs significantly from that of other states.[4] *See State v. Colorado*, 890 So. 2d 468, 472 (Fla. 2d DCA 2004) (Altenbernd, J., concurring) ("If the corpus delicti rule in Florida were comparable to the rule in South Carolina, Missouri, and Utah, then we would reverse the trial court and remand for trial.").

As this explanation has probably made clear, the propriety of a state court's application of the *corpus-delicti* doctrine is a pure question of state law that cannot be challenged on federal habeas review. *See, e.g., Culver*, 2018 WL 11014031, at *4 ("However, as a creature of state law, the *corpus delicti* rule does not carry with it implications of a violation of federal constitutional law. Whether the prosecution satisfied the *corpus delicti* doctrine as it is applied in Florida is solely a state law issue."); *Hamilton v. Sec'y, Dep't of Corr.*, 2012 WL 603285, at *5 (M.D. Fla. Feb. 24, 2012) (Kovachevich, J.) ("Finally, Hamilton's [*corpus-delicti*] claim does not raise a constitutional claim. Although he advances his argument in the guise of a due process violation, the claim is grounded on an assertion that the State court improperly interpreted its own evidentiary rules regarding admissibility of Hamilton's confession."); *see also Autry v. Estelle*, 706 F.2d 1394, 1407 (5th Cir. 1983) ("Such a state rule of 'corpus delicti' [sic] has no

---

[4] Although the *corpus-delicti* doctrine was once the standard in American courts, most jurisdictions no longer follow it. *See J.B.*, 705 So. 2d at 1378 ("While we acknowledge that several jurisdictions have abandoned this rule . . . we reaffirm the requirement that an independent corpus delicti must be established when offering an admission against interest into evidence."); *see also Burks v. State*, 613 So. 2d 441, 445 (Fla. 1993) (Shaw, J., concurring in part and dissenting in part) ("The corpus delicti rule has outlived its usefulness and should be discarded. Courts and commentators have recommended the abolition of the rule."); *United States v. Brown*, 617 F.3d 857, 860–61 (6th Cir. 2010) (referring to the rule as "a dusty doctrine of criminal law" that "has received mixed reviews in the federal courts" and wondering whether the rule has now "outlived its utility and ought to be treated as a quaint, though now irrelevant, reminder of the [Supreme] Court's pre-*Miranda* days").

independent constitutional footing."). Because "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief," *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992), we **DISMISS** Ground Four.

### E. Grounds Five, Seven, and Eight

The Respondent argues that Grounds Five, Seven, and Eight are all unexhausted for the same reason: Ravelo (the Respondent says) didn't "fairly present" the federal nature of these claims to the Third DCA on appeal. *See* Response at 40–41. The Respondent concedes that Ravelo initially raised all three grounds for relief as "ineffective assistance of counsel claim[s] in his Rule 3.850 motion." *Id.* at 40. But, the Respondent continues, when the state postconviction court denied his Postconviction Motion, Ravelo appealed that decision to the Third DCA and, in doing so, transformed Grounds Five, Seven, and Eight into "claim[s] of trial court error for failing to grant him an evidentiary hearing"— meaning that the Third DCA was never presented with the same ineffective-assistance claims Ravelo advanced before the state postconviction court. *Ibid.* In reply, Ravelo points out that he "specifically argued the merits of his [ineffective-assistance] claims in that same initial brief." Reply at 6.

Here, we agree with Ravelo. It's true that, on appeal, Ravelo *primarily* contended that "the trial court erred in summarily denying Appellant's Claim[s] I, [III, and IV.]" Postconviction Initial Brief [ECF No. 25-1] at 224. As Ravelo explains in his Reply, however, his Postconviction Initial Brief *also* addressed the merits of the ineffective-assistance claims he'd raised in his Postconviction Motion— the same claims he now presents in this Petition. *See, e.g., id.* at 230 ("Applying these principles, Appellant's [ineffective-assistance] claim is legally sufficient[.]"); *id.* at 231 ("Mr. Ravelo was never given the opportunity to depose or cross examine [the victim], nor [contest] the accuracy of this statement. As trial counsel failed to object, this was not preserved for appeal."); *id.* at 233 ("However, in the case at bar, we don't have any indication in the record whether trial counsel in fact reviewed the

discovery to begin with, much less have an informed conversation and consultation with Appellant prior to the decision to testify or not.").

The Respondent is, of course, right that Ravelo's claims on appeal weren't identical to the claims he'd presented in his Postconviction Motion. Still, we think Ravelo argued the essential core of these claims fairly consistently throughout the pendency of his state postconviction proceedings. *Cf. Henry v. Dep't of Corr.*, 197 F.3d 1361, 1367 (11th Cir. 1999) ("As a general matter, we think that a request for an evidentiary hearing on ineffective-assistance-of-counsel claims is plainly enough an argument that the petitioner has evidence to show his entitlement to a new trial. Indeed, . . . the difference between a request for an evidentiary hearing and a request for more substantial relief, both premised on the same constitutional claim, is not material to the exhaustion inquiry."). We'll therefore review Grounds Five, Seven, and Eight on the merits.

### F.  Ground Six

Ground Six, on the other hand, is plainly unexhausted. Ground Six is a near carbon copy of "Claim II" of Ravelo's Postconviction Motion. *Compare* Petition at 14 ("Due to trial counsel's failure to object, the jury learned about how the investigation took 14 months, how the Detective heard 'from both sides' in his quest to 'Find the Truth,' and even how [the victim] had in fact identified one of the checks, even when the court had entered a pre-trial order not allowing any testimony of [the victim]."), *with* Postconviction Motion [ECF No. 25-1] at 188 ("Due to trial counsel's failure to object, the jury learned about how the investigation took fourteen months, how the Detective heard 'from both sides' in his quest to 'Find the Truth,' and even how [the victim] had in fact identified one of the checks, even when the court had entered a pre-trial order not allowing any testimony of [the victim]."). But Ravelo never raised "Claim II" (or any other substantially similar claim) on appeal. *See generally* Postconviction Initial Brief [ECF No. 25-1] at 216–235 (failing to include this argument). And, of course, Ravelo had an obligation to raise this claim *both* in his Postconviction Motion *and* on appeal.

*See Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) ("In Florida, exhaustion usually requires not only the filing of FLA. R. CRIM. P. 3.850 motion, but an appeal from its denial." (citing *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979))). Because Ravelo failed to appeal the denial of "Claim II," Ground Six hasn't been exhausted.[5]

### G. Procedural Default

After a thorough review of the Petition, we conclude that Ground One (in part), Ground Two, and Ground Six are unexhausted.[6] When presented with a "mixed petition"—which contains a combination of both exhausted and unexhausted claims—"the district court ordinarily must either dismiss the petition, 'leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court,' or grant a stay and abeyance to allow the petitioner to exhaust the unexhausted claim[s]." *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007) (quoting *Kelley*, 377 F.3d at 1351). That said, we needn't dismiss or stay the case if the unexhausted claims "can no longer be litigated on the merits in state court because they are procedurally barred [under state law]." *Kelley*, 377 F.3d at 1351. In this scenario, the proper course is to treat "[t]he unexhausted claims . . . as if [they were] procedurally defaulted" and dismiss them. *Ogle*, 488 F.3d at 1370.

Here, Grounds One (in part), Two, and Six are all unexhausted because Ravelo never presented the federal nature of these claims to the Third DCA (either on direct appeal or on appeal from the denial of his Postconviction Motion). And, because it's now way too late for Ravelo to go

---

[5] Ground Six's non-exhaustion is a bit of a pyrrhic victory for the Respondent. After all, as the Respondent itself recognizes, Ground Seven (which *is* exhausted) raises "the same argument as [Ground Six]." Response at 49.

[6] Recall that we've already dismissed Ground Four because it failed to state a claim that's cognizable under 28 U.S.C. § 2254—so, we won't separately address whether that claim was exhausted or not. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("The district court dismissed the petition with prejudice, finding the issue to be one of state law and, thus, not cognizable in a federal habeas action. We affirm.").

back to the Third DCA, *see Burgos v. Dixon*, 2022 WL 17093216, at \*11 (S.D. Fla. Nov. 21, 2022) (Altman, J.) ("Burgos failed to present the federal nature of these claims to the state's highest court (*i.e.*, the Fourth DCA), and is now barred under Florida law from raising these claims in a successive appeal[.]" (citing *Claughton v. Claughton*, 393 So. 2d 1061, 1062 (Fla. 1980))), these claims are procedurally defaulted, *see Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief[.]").

Of course, Ravelo might've circumvented this procedural default if he could show *either* "cause and prejudice" *or* "actual innocence," but he never suggests that either exception applies, *see generally* Petition; Reply. We won't consider exceptions Ravelo himself decided not to address. *See Castillo v. Dixon*, 2022 WL 2651623, at \*5 (S.D. Fla. July 8, 2022) (Altman, J.) ("Castillo's actual-innocence claim fails at the first step because he's identified *no evidence* (let alone 'new reliable evidence' that 'was not presented at trial') to support his conclusory claims of innocence." (quoting *Arthur*, 452 F.3d at 1245)); *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary circumstances."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forfeited].").

 In short, Grounds Two and Six—along with the second and third subclaims of Ground One—are procedurally defaulted and must be **DISMISSED**.

## II.    The Merits

If a habeas claim has been "adjudicated on the merits in State court proceedings," then we have the power to decide whether the state court's decision was "reasonable." 28 U.S.C. § 2254(d). In

assessing whether the state court's adjudication was "reasonable," we look to the "highest state court" that reached the merits of Ravelo's claims. *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008). In our case, the Third DCA was the highest court to consider all five of Ravelo's exhausted claims—Ground One (subclaim one) and Ground Three on direct appeal, and Grounds Five, Seven, and Eight on collateral review. *See Ravelo*, 251 So. 3d at 116; *Ravelo*, 303 So. 3d at 539. Neither of the Third DCA's decisions rejecting these claims explained the court's "decision on the merits in a reasoned opinion," so we must "look through" to the "last related state-court decision that does provide a relevant rationale." *Wilson*, 138 S. Ct. at 1192. When there is no state-court order "explaining its reasons for rejecting a claim," we presume "that the state court adjudicated the claim on the merits" and review the state-court record "to determine what arguments or theories supported, or [could have] supported, the state court's decision." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1232 (11th Cir. 2014) (cleaned up). Ravelo ultimately bears the burden "to demonstrate that there was no reasonable basis for the decision of [the state court] to deny his claim." *Tarleton v. Sec'y, Fla. Dep't of Corr.*, 5 F.4th 1278, 1291 (11th Cir. 2021). And, as we're about to see, Ravelo has failed to carry this burden.

## A. Ground One

In Ground One (subclaim one), Ravelo says that the state trial court violated his Confrontation Clause rights when it allowed the State to "introduce[ ] a direct hearsay quote as to an element of the offense from a non-testifying witness—[the victim,] Mrs. Boyansky[.]" Petition at 5. As Ravelo explains, during the trial, the State played the audio recording of an interview between Detective Gonzales and Ravelo. That recording included the following exchange:

> [Detective Gonzales:] I have your banking records. As you can tell, it took me this long to—to do the homework. And obviously, I am talking—I'm actually mostly just telling you what I know and you're just confirming it. And you obviously know I know your [sic] lying, okay?
>
> Mr. Ravelo: Okay.

> Det. Gonzales: There is a $43,000 check. There is another $30,000 check. Ms. Boyansky never authorized those checks. *She did tell me about the $25,000 she gave you for taking such good care to Mr. Boyansky, Sydney.*
>
> Mr. Ravelo: Uh-huh.

Trial Tr. Vol 6 [ECF No. 26-7] at 178–79 (emphasis added). Ravelo asserts that Detective Gonzales's reference to a conversation he had with Ms. Boyansky (*viz.*, "She did tell me about the $25,000 she gave you") was a testimonial statement that was "subject to the requirements of the confrontation clause." Petition at 5. The Respondent counters along two fronts: (1) the contents of "Petitioner's recorded interview was not testimonial because it was not offered for the truth of the matter asserted," Response at 19; and (2) any error was harmless "in light of all the evidence presented by the State including Petitioner's confession," *id.* at 21. We agree with the Respondent on both counts.

"The Confrontation Clause to the Sixth Amendment provides that, 'in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.'" *United States v. Charles*, 722 F.3d 1319, 1322 (11th Cir. 2013) (quoting U.S. CONST. amend. VI) (cleaned up). In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause doesn't allow the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant [had] a prior opportunity for cross-examination." 541 U.S. at 53–54. A testimonial statement is "the functional equivalent of in-court testimony, such as affidavits, depositions, prior testimony, and statements made under circumstances which would lead an objective witness to reasonably believe the statement would be available for use at a later trial." *United States v. Santiago Rivera*, 2022 WL 17175613, at *1 (11th Cir. Nov. 23, 2022) (citing *Crawford*, 541 U.S. at 51–52).

There are two main exceptions to the *Crawford* rule. *One*, "non-testimonial evidence is not subject to confrontation" because "it lacks the accusatory character of [testimonial statements]." *United States v. Cantellano*, 430 F.3d 1142, 1145 (11th Cir. 2005). *Two*, the Confrontation Clause "does not bar

the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)); *see also United States v. Jimenez*, 564 F.3d 1280, 1286 (11th Cir. 2009) ("There can be no doubt that the Confrontation Clause prohibits *only* statements that constitute impermissible hearsay.").

Ravelo never objected to the admission of this statement at trial.[7] *See* Trial Tr. Vol. 6 [ECF No. 26-7] at 178–79. And the Third DCA didn't issue a written opinion about it. *See Ravelo*, 251 So. 3d at 116. Without the benefit of a "reasoned opinion" from the state courts, we must examine the state-court record as a whole "to determine what arguments or theories supported" the state court's decision to deny relief. *Hittson*, 759 F.3d at 1232. To help us make this assessment, the Supreme Court has told us to consider issues "that were briefed or argued to the state [appellate] court[.]" *Wilson*, 138 S. Ct. at 1192. In our case, the State (on appeal)—like the Respondent now—contended that "there was no [constitutional] violation because Boyansky's statements regarding the checks were not offered for the truth of the matters asserted but instead were offered by the detective to get the Appellant to confess after confronting him saying that he was lying." Direct Appeal Answer Brief [ECF No. 25-1] at 159.

Assuming (as we must) that the state court adopted this argument, its decision was plainly reasonable. A statement admitted "for a purpose *other* than the truth of the matter asserted" doesn't violate the Confrontation Clause. *Jimenez*, 564 F.3d at 1287. In other words, the statement at issue

---

[7] Under state law, therefore, Ravelo failed to preserve this argument for appellate review. *See Delhall v. State*, 95 So. 3d 134, 159 (Fla. 2012) ("In order to preserve a *Crawford* objection to hearsay as violative of the Confrontation Clause, a specific objection is necessary." (cleaned up)). The Third DCA thus could have granted relief *only if* the Confrontation Clause violation constituted "fundamental error." *Phillips v. State*, 316 So. 3d 779, 782 (Fla. 1st DCA 2021) ("However, an unpreserved argument is reviewable if it constitutes fundamental error. For an error to justify reversal absent a timely objection, the error must run so deeply through the trial proceedings that it affects the validity of the trial itself." (cleaned up)). Since we're here reviewing the reasonableness of the Third DCA's decision, *see* 28 U.S.C. § 2254(d), it's worth noting that the Third DCA would only have reversed the trial court if this (supposed) *Crawford* error had been "fundamental."

here—"[s]he did tell me about the $25,000 she gave you for taking such good care to Mr. Boyansky, Sydney," Trial Tr. Vol. 6 [ECF No. 26-7] at 179—violates the Confrontation Clause *only* if it was offered for the truth of the matter.

But the State didn't introduce Ms. Boyansky's statement to Detective Gonzales to establish that she'd authorized a $25,000 check as a gift to Ravelo. Instead, the statement was admitted to show that, when faced with an intractable inconsistency between his story and Ms. Boyansky's, Ravelo confessed. *Cf. United States v. Elysee*, 993 F.3d 1309, 1338 (11th Cir. 2021) ("We have no doubt that Deen's out-of-court statements would not be hearsay if offered merely to demonstrate their 'effect on the listener.'" (citing FED. R. EVID. 801(c))). Recall that Detective Gonzales relayed Ms. Boyansky's statement to Ravelo only *after* Ravelo insisted that Ms. Boyansky had given him *carte blanche* to use her credit cards and bank accounts. *See* Trial Tr. Vol. 6 [ECF No. 26-7] at 172 ("Mr. Ravelo: She authorized me to use the credit card account. Det. Gonzales: Eddie I know you're lying. I know, and you very well know that she never authorized you. You were never authorized to do that."). Once Ravelo had been "impeached" by Ms. Boyansky's statement, he quickly admitted that he had "take[n] money from [Ms. Boyansky's] account," Trial Tr. Vol. 7 [ECF No. 26-8] at 11, that he had "deposit[ed] check[s] . . . directly into [his] account that [were] not given to [him] from Ms. Boyansky," *id.* at 12, and that he "falsified [Ms. Boyansky's] signature" on multiple checks, *id.* at 20.

Here, then, we don't care whether Ms. Boyansky's statement about the $25,000 check is true— the province of hearsay. Instead, we care only that the incongruity the statement created between Ravelo's account and the victim's *impelled* Ravelo to confess. *See Street*, 471 U.S. at 413–14 (holding that the admission of a co-defendant's confession didn't violate the Confrontation Clause because it was admitted "not to prove what happened at the murder scene but to prove what happened when [the defendant] confessed"); *United States v. Schlei*, 122 F.3d 944, 981 (11th Cir. 1997) ("As noted above, [the witness's] deposition testimony was admitted for the purpose of showing Schlei's reaction to it,

and not for its truth. Thus, Schlei was not deprived of his rights under the Confrontation Clause."); *see also Adams v. Holland*, 168 F. App'x 17, 20 (6th Cir. 2005) ("Because co-defendant Crowell's statement was admitted via Detective Smith solely for the non-hearsay purpose of impeachment, it 'raises no Confrontation Clause concerns.'" (quoting *Street*, 471 U.S. at 414)). Since Ms. Boyansky's statement wasn't offered for its truth, it didn't implicate the Confrontation Clause. *See Jiminez*, 564 F.3d at 1286–87 ("There can be no doubt that the Confrontation Clause prohibits *only* statements that constitute impermissible hearsay. The Supreme Court explained that '[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" (quoting *Crawford*, 541 U.S. at 59 n.9)).

But here's the thing: Even if the statement *did* violate the Confrontation Clause, its admission didn't have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Grossman v. McDonough*, 466 F.3d 1325, 1339 (11th Cir. 2006) ("[W]e have had occasion to say more than once that the *Brecht* standard governs harmless error analysis in habeas corpus cases involving [Confrontation Clause] transgressions associated with the improper admission of out-of-court statements."). The statement, after all, took up just a couple seconds of a very lengthy interview, *see generally* Trial Tr. Vol. 6 [ECF No. 26-7] at 144–86; Trial Tr. Vol. 7 [ECF No. 26-8] at 4–59—in which (as we've highlighted) Ravelo *repeatedly confessed* to using Ms. Boyansky's funds without her permission, to opening lines of credit in her name without her consent, and to having falsified her signature. *See, e.g.*, Trial Tr. Vol. 6 [ECF No. 26-7] at 173 ("[Det. Gonzales:] Now, the question. Were you authorized to add yourself to the American Express account of Ms. Boyansky? Mr. Ravelo: No."); Trial Tr. Vol. 7 [ECF No. 26-8] at 11 ("Det. Gonzales: Okay. Did you take money from her account, did you cash a check from her account, and deposit into your account? Mr. Ravelo: I did."); *id.* at 12 ("Det. Gonzales: Now, did you ever deposit a check, a check directly onto your account that it was

not given to you from Ms. Boyansky? . . . Mr. Ravelo: If I did, it shows that I did it, then I mean I did it. I'm not going to lie about that."); *id.* at 20 ("Det. Gonzales: So you—you falsified her signature. Mr. Ravelo: Yeah.").

And the State then corroborated this confession with substantial evidence of Ravelo's guilt. It introduced banking records, for instance, showing that (1) "between the period of November 2008 and January 2013 there were $699,000 worth of checks written out to cash that were cashed by Eduardo Ravelo," Trial Tr. Vol. 5 [ECF No. 26-6] at 37, and (2) "Eduardo Ravelo obtained a credit card on the American Express account of Ms. Boyansky on April 4, 2011[,] [a]nd over the 14 month period between April 2011 and June 2012, there were $299,959 worth of charges placed on that card," *id.* at 40. The State also showed that, during this time, Ravelo spent large sums of money on extravagant items—*e.g.*, "the leasing of luxury vehicles," "$43,000 worth of charges made at . . . five individual [jewelry] store vendors," "$41,000 on electronics," and a trip to Walt Disney World. *Id.* at 46–49. Not content to let things lie, the State then introduced a recorded phone call between Ravelo and an American Express customer-service agent, in which Ravelo *can be heard* impersonating Ms. Boyansky. *See* Trial Tr. Vol. 6 [ECF No. 26-7] at 136–37 ("Q: Det. Gonzales, do you hear the voice of Ms. Boyansky so far in this recording? A: Absolutely not. Q: The individual who purports to be Ms. Boyansky, whose voice is that? A: That's Mr. Ravelo's voice."); Order Denying Postconviction Motion [ECF No. 25-1] at 200 ("The State introduced an audiotape of a telephone call made by the Defendant to American Express adding his name to [Ms. Boyansky's] account where he claimed to be the victim's grandson and when they asked to speak to her, he pretended to put her on the phone, but it was *obviously the Defendant faking an elderly woman's voice*." (emphasis added)). Given this overwhelming evidence of Ravelo's guilt, Detective Gonzales's brief allusion to Ms. Boyansky's out-of-court statement was (if it was error at all) harmless error. *See Grossman*, 466 F.3d at 1340 ("In light of the overwhelming physical and testimonial proof, we cannot say the [error] had a substantial and

injurious effect or influence in determining the jury's verdict."); *Hodges v. Att'y Gen., State of Fla.*, 506 F.3d 1337, 1342–43 (11th Cir. 2007) (holding that, to the extent the "detective violated the Confrontation Clause," the error was harmless because "Hodges confessed to two witnesses on two separate occasions that he had killed Ms. Ricks, a witness placed his truck at the scene of the murder, and several witnesses disputed his alibi defense").[8]

---

[8]     For similar reasons, even if Ravelo *had* exhausted the second and third subclaims of Ground One, we'd have found that the alleged errors Ravelo complains about in those subclaims wouldn't have altered the jury's verdict.

    Ravelo's second subclaim alleges that Detective Gonzales spoke "about non-testifying witnesses who confirmed that it was Petitioner who made certain purchases." Petition at 6. Ravelo doesn't say who these "non-testifying witnesses" were, but Detective Gonzales confirmed during his testimony that he "reviewed American Express statements belonging to the account of Ms. Boyansky" and "physically went out to some of these locations to confirm what they did and didn't sell"— presumably to determine who bought what and when. Trial Tr. Vol. 6 [ECF No. 26-7] at 117–18. Of course, the Detective's review of non-testimonial business records (*viz.*, credit card statements and purchase receipts) doesn't violate the Confrontation Clause. *See Bullcoming v. New Mexico*, 564 U.S. 647, 670 (2011) ("Relatedly, in the Confrontation Clause context, business and public records 'are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.'" (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009) (alteration in original))). And, even if Detective Gonzales *was* testifying here about out-of-court (and testimonial) conversations he had with certain vendors—we're guessing here because Ravelo never tells us what *exactly* he's talking about— those statements played only a very minor role in the case. The State, remember, played a video of Ravelo's confession and then corroborated that confession with, among other things, an audio-recording of Ravelo impersonating the victim on a call with American Express. In these circumstances, any error these statements might've caused was plainly harmless. *See Hodges*, 506 F.3d at 1342–43 (holding that, to the extent the "detective violated the Confrontation Clause," the error was harmless because "Hodges confessed to two witnesses on two separate occasions that he had killed Ms. Ricks, a witness placed his truck at the scene of the murder, and several witnesses disputed his alibi defense").

    The third subclaim would fare no better. In this subclaim, Ravelo insists that Detective Gonzales improperly went "into the details of the investigation and the officer's basis for the arrest"— which (Ravelo says) were "irrelevant and highly prejudicial." Petition at 6. Again, Ravelo doesn't tell us what these supposedly irrelevant and prejudicial details were, and we won't "ferret out delectable facts buried in a massive record" to figure out exactly what Ravelo means. *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). Still, even if we assume that Detective Gonzales's testimony included some irrelevant bits, this error wouldn't have tainted his other testimony about the evidence he *did* uncover (*see supra* § II.A)—which, together with the overwhelming evidence the State produced at trial (*see ibid.*; *see also infra* § II.C), was more than sufficient to support the jury's verdict. *See Grossman*, 466 F.3d at 1340 ("In light of the overwhelming physical and testimonial proof, we cannot say the [error] had a substantial and injurious effect or influence in determining the jury's verdict.").

We thus **DENY** Ground One on the merits.

**B.  Ground Three**

In Ground Three, Ravelo claims that the trial court violated his due-process rights when it allowed the prosecutor to "shift the burden of proof" during the direct examination of Detective Gonzales. Petition at 9. Here's the exchange Ravelo's concerned about:

> [Prosecutor:] Now, Det. Gonzales, you—during the course of your investigation, you've heard from both sides, correct? You get to hear from the family side, the Martins, who are related to Irene Boyansky?
>
> [Det. Gonzales:] Yes.
>
> Q: Okay. And, you have one theory of what happened, but your job as a Detective is to do what exactly?
>
> A: Find the truth.

Trial Tr. Vol. 6 [ECF No. 26-7] at 141. In Ravelo's view, this exchange "erroneously led the jury to believe that Petitioner had provided, or failed to provide evidence to the Detective during his investigation, and that Petitioner carried the burden of introducing exculpatory evidence." *Ibid.* The Respondent counters that the "detective's testimony did not constitute improper burden shifting because he [did] not comment on Petitioner's failure to produce any evidence." Response at 34. As the Respondent sees things, Detective Gonzales was simply explaining that "he had a duty to investigate all theories thoroughly, regardless as to whether he had a theory of his own." *Id.* at 35.[9]

Ravelo's claim borders on frivolity. The prosecution impermissibly shifts the burden of proof when it "relieve[s] the state of its burden of proving, beyond a reasonable doubt, that [the defendant] committed [the charged offense.]" *Hall*, 892 F.2d at 1546. A prosecutor "must refrain from making

---

[9] This is (essentially) the same argument the State advanced in its Answer Brief on direct appeal. *See* Direct Appeal Answer Brief [ECF No. 25-1] at 163–64 ("There is nothing in this line of questioning that may have led the jury to believe that the Appellant had a duty to produce exculpatory evidence. The questioning does not imply that the Appellant should have provided any evidence."). As with Ground One, then, we presume that the Third DCA adopted this argument when it affirmed the trial court's decision. *See Wilson*, 138 S. Ct. at 1192.

burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove his innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992); *see also Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991) ("[T]he state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence."). Given this well-worn definition of burden shifting, we reject out of hand Ravelo's definition, which would prevent a witness from testifying that the defendant "provided, or failed to provide evidence." Petition at 9. Ravelo's right, of course, that a witness cannot criticize a criminal defendant's *failure* to provide evidence. But, where the defendant *chooses* to provide evidence, nothing in the Due Process Clause prevents the government from relying on that statement as evidence of the defendant's guilt.

And that's precisely what we have here. In the portion of testimony Ravelo cites, Detective Gonzales said only that he'd "heard from both sides"—an indisputably true (and unproblematic) statement since the jury *had already heard* from both Ravelo and Ms. Boyansky's family. *See, e.g.*, Trial Tr. Vol. 6 [ECF No. 26-7] at 144–86 (Ravelo's confession); Trial Tr. Vol. 7 [ECF No. 26-8] at 4–59 (Ravelo's confession continued); Trial Tr. Vol. 4 [ECF No. 26-5] at 60–124 (testimony of Serge Martin, Ms. Boyansky's son); *id.* at 127–84 (testimony of Jacqueline Martin, Ms. Boyansky's granddaughter); Trial Tr. Vol. 5 [ECF No. 26-6] at 6–27 (testimony of Lynn Martin, Ms. Boyansky's daughter). Again, the Constitution doesn't prevent the government from commenting on evidence *the defendant chose to provide*. And there's obviously nothing improper about a police officer who tries to "run[ ] down all leads" and "rul[e] out all theories." Trial Tr. Vol. 6 [ECF No. 26-7] at 141–42. That, after all, is what we *should* expect of our law enforcement officers. In any case, Detective Gonzales never said—and never implied—that Ravelo had some *obligation* to produce evidence. Nor did he ever suggest that there was some piece of evidence Ravelo had *failed* to provide. We therefore **DENY** Ground Three.

### C.  Ground Five

Ravelo argues in Ground Five that his trial counsel was ineffective because he failed to "show or share with the Defendant the discovery received prior to trial." Petition at 11. Ravelo alleges that, just a few days before trial, "the State amended discovery with some 500 pages of additional credit card records." *Id.* at 12. And (he insists) his lawyer failed to "provide [him] an opportunity to review the detailed credit card information"—a failure that prejudiced Ravelo because "he would have been able to explain the use [of the credit card] as being linked to Mrs. Boyansky." *Ibid.* The Respondent counters that Ravelo "was in court and aware of these documents" and, in any event, that the jury heard Ravelo's explanation for the incriminating bank records through the testimony of other witnesses. Response at 42–43.

In denying this claim, the state postconviction court entered a detailed order, *see* Order Denying Postconviction Motion [ECF No. 25-1] at 201 ("The Defendant was fully aware of the extensive discovery the State had amassed in their investigation.")—which the Third DCA affirmed in an unwritten decision, *see Ravelo*, 303 So. 3d at 539. We therefore "look-through" the Third DCA's summary affirmance "to the last related state-court decision that does provide a relevant rationale"—*i.e.*, the Order Denying Postconviction Motion [ECF No. 25-1]—and review the reasonableness of *that* decision, *see Wilson*, 138 S. Ct. at 1192; *see also, e.g.*, *Burgos*, 2022 WL 17093216, at *15 ("Since the state postconviction court's Order Denying Amended Postconviction Motion is the 'last related state-court decision that does provide a relevant rationale' we'll review the reasonableness of that decision under § 2254(d)'s heightened standard of review.").

To establish that counsel was ineffective for failing to share these "500 pages" of discovery, Ravelo must show *both* that counsel's decision was "professionally unreasonable" *and* that it prejudiced him. *Strickland*, 466 U.S. at 691–92. The state court found that Ravelo failed to show that counsel was ineffective, *see* Order Denying Postconviction Motion [ECF No. 25-1] at 210 ("The Defendant cannot

claim that his attorney was [ineffective] where he had ample opportunity to view the evidence in advance of trial[.]"), and Ravelo hasn't shown that this decision was unreasonable. Ravelo says that, had he seen the discovery, he would have insisted on testifying at trial, so that he could tell the jury that "the purchases [reflected in the bank records] were made on behalf of Mrs. Boyansky." Petition at 12. But (as the state postconviction court observed) Ravelo's proposed testimony had no "reasonable probability" of affecting the outcome of the case because (1) the jury already heard Ravelo's explanation (from Ravelo himself), and (2) the State (as we've seen) adduced overwhelming evidence of Ravelo's guilt.

*First*, the evidence at trial *repeatedly* showed that Ravelo "had, from the beginning of the case, claimed that he had permission from Ms. Boyansky and that the transactions he made were for her benefit." Response at 43; *see also, e.g.*, Trial Tr. Vol. 6 [ECF No. 26-7] at 152 ("Det. Gonzales: She [the victim] gave you access to her American Express account? Mr. Ravelo: Yes. . . . Det. Gonzales: Okay. Did she also give you authority to spend in a lot of places for you to go shopping? Mr. Ravelo: She did. She said that I could use the credit card."); *id.* at 178 ("Mr. Ravelo: I cashed a lot of checks for Ms. Boyansky. Det. Gonzales: Alright. But did you ever put the money that you cashed into your account without her consent? Mr. Ravelo: I don't believe doing that. Truthfully, I don't believe doing that. I mean, like I said, I did cash a lot of checks for Ms. Boyansky and most of the times, 99 percent of the time it was just to go [for Ms. Boyansky to use at] the casino."); *id.* at 181 ("Mr. Ravelo: I believe at some point I think I told [Ms. Boyansky about the purchases], she knew about it, but I don't know. Det. Gonzales: Alright. Mr. Ravelo: Because I do remember that at one point she wanted me to have a card."). Indeed, as we've noted, the exchange between Ravelo and Detective Gonzales that's the focus of Ground One was precipitated by Ravelo's claims that (1) Ms. Boyansky "would give me some extra money" after a successful day at the casino, and (2) he often "cashed a lot of checks for Ms.

Boyansky." *Id.* at 177–78. Ravelo's thus wrong to suggest that his testimony would have added anything new to the evidence the jury already heard.

*Second*, as we've explained, Ravelo's proposed testimony wouldn't have made the least bit of difference. The State produced a mountain of bank and credit card statements—much of which established that Ravelo had stolen, for his own use, almost a million dollars of Ms. Boyansky's money. *See supra* § II.A. This evidence—which showed that Ravelo was using Ms. Boyansky's money to pay for luxury items and expensive vacations—would have eviscerated Ravelo's claim that he was spending this money for Ms. Boyansky. *See ibid.* And then, of course, there's Ravelo's own recorded statement—in which he unambiguously confessed to the crimes. *See* Trial Tr. Vol. 7 [ECF No. 26-8] at 11 ("Det. Gonzales: Okay. Did you take money from her account, did you cash a check from her account, and deposit into your account? Mr. Ravelo: I did.") Given this "overwhelming evidence of the defendant['s] fraud," Ravelo cannot prove that "any failure on counsel's part to [timely share] discovery . . . affected the outcome at trial." *Curshen v. United States*, 2017 WL 11638968, at *11 (S.D. Fla. Apr. 11, 2017) (White, Mag. J.), *report and recommendation adopted*, 2017 WL 11638967 (S.D. Fla. July 28, 2017) (Martinez, J.).

Ground Five, in sum, is **DENIED**.

### D.  Ground Seven

Ground Seven takes the first subclaim of Ground One and transmutes it into an ineffective-assistance claim. *Compare* Petition at 5 ("The State introduced direct hearsay quote as to an element of the offense from a non-testifying witness—Mrs. Boyansky—resulting in a denial of Petitioner's Right of Confrontation."), *with id.* at 15 ("Petitioner was denied his rights to effective assistance of counsel . . . for counsel's failure to enter timely trial objections to the State's violation of Defendant's right to confront the witness against him."); *see also* Response at 49 ("[Ground Seven] is the same argument as in the 'first argument' in [Ground One] . . . couched in an ineffective assistance of counsel claim.").

In this claim, then, Ravelo maintains that his lawyer was ineffective for failing to object to that portion of his interview with Detective Gonzales in which the Detective mentioned that the victim "[told] me about the $25,000 she gave you for taking such good care of Mr. Boyansky[.]" Petition at 15; *see also* Trial Tr. Vol. 6 [ECF No. 26-7] at 179.

We agree with the state postconviction court that this claim fails both prongs of the *Strickland* test. *See* Order Denying Postconviction Motion [ECF No. 25-1] at 208 ("As noted earlier, this evidence . . . was consistent with [Ravelo's] defense that some of the extravagant gifts and deposits were intentionally made by the Victim to show her appreciation for the Defendant's care for her and her husband. . . . The Defendant has failed to show how excluding this statement would have [a]ffected the outcome of the trial."). *First*, counsel cannot be blamed for failing to advance a baseless objection. *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."); *Ether v. Dixon*, 2022 WL 1908918, at *16 (S.D. Fla. June 3, 2022) (Altman, J.) ("To the contrary, as we've said, a lawyer cannot be faulted for failing to advance an unviable objection."). And, as we've explained (*q.v.* our discussion on the Confrontation Clause in § II.A), any objection by counsel would have been overruled because the statement was plainly admissible. *Cf. Jimenez*, 564 F.3d at 1286 ("There can be no doubt that the Confrontation Clause prohibits *only* statements that constitute impermissible hearsay.").

*Second*, as we've said (*see supra* § II.A), Ravelo suffered no prejudice because, given the overwhelming evidence of Ravelo's guilt, the unobjected-to statement had (at most) a negligible impact on the outcome of the trial. *See Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1300 n.9 (11th Cir. 2014) ("The overwhelming evidence of Bates's guilt also makes it obvious that Bates cannot show *Strickland* prejudice. Even if one assumes that Bowers was incompetent for failing to object to the husband's testimony, '[a]n error by counsel . . . does not warrant setting aside the judgment of a

criminal proceeding if the error had no effect on the judgment.'" (quoting *Strickland*, 466 U.S. at 691) (alterations in original))).

Ground Seven, in short, is **DENIED**.

### E.  Ground Eight

Ground Eight is a restatement of Ground Five. Here, Ravelo claims that his lawyer interfered with his right to testify by failing to "share and review with Petitioner the financial information received prior to April 27, 2016." Petition at 16. Ravelo maintains that his decision not to testify was "not a knowing and intelligent waiver" because, had he seen the late-disclosed records, he would've taken the stand to "explain the different transactions" to the jury. *Ibid.* The Respondent "incorporates the [same] arguments made in [Ground Five]"—namely, that Ravelo *knowingly* chose not to testify, and that, even if he had testified, there's no reasonable probability "that the outcome of the trial would have been different." Response at 50. The state postconviction court determined that (1) Ravelo "had ample opportunity to view the evidence in advance of trial and was advised on no less than two occasions by the Court that his decision to testify or not testify had to be his own decision," Order Denying Postconviction Motion [ECF No. 25-1] at 210, and that (2) there was no reasonable probability that Ravelo would have changed his mind about testifying because he "was fully aware of the extensive discovery the State had amassed in their investigation," *id.* at 201. This decision was reasonable.

"A criminal defendant has a 'fundamental constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel.'" *Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999) (quoting *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc)). At the same time, defense counsel "bears the responsibility for advising the defendant of his right to testify or not to testify, of the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *Fishbone v.*

*Sec'y for Dep't of Corr.*, 165 F. App'x 800, 801 (11th Cir. 2006) (citing *Teague*, 953 F.2d at 1533). When trial counsel fails to "advise the defendant of his right to testify and thereby to ensure that the right is protected," we assess the ineffective-assistance claim under the familiar *Strickland* test. *Teague*, 953 F.2d at 1534. To prevail on this claim, therefore, Ravelo must show *both* that his lawyer's faulty advice vitiated the effectiveness of his waiver, *see id.* at 1533 ("This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an intentional relinquishment or abandonment of a known right or privilege." (cleaned up)), *and* that there's "a reasonable probability that [the outcome] would have been different had he testified," *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1130 (11th Cir. 2012).

　　As we've explained (*see supra* §§ II.A, II.C*)*, there's no "reasonable probability" that Ravelo's testimony would've made any difference at all to the outcome of his trial. Not only did the jury already hear (in Ravelo's own words no less) the explanation he now says he would've presented through his testimony, *see, e.g.*, Trial Tr. Vol. 6 [ECF No. 26-7] at 152 ("Det. Gonzales: [Ms. Boyansky] gave you access to her American Express account? Mr. Ravelo: Yes. . . . Det. Gonzales: Okay. Did she also give you authority to spend in a lot of places for you to go shopping? Mr. Ravelo: She did. She said that I could use the credit card."), but that testimony was flatly inconsistent with all the other evidence in the case—including, most obviously, with Ravelo's *own* recorded confession, *cf. Franklin v. United States*, 227 F. App'x 856, 860 (11th Cir. 2007) ("The trial transcript and Franklin's proposed testimony, as proffered in his pleadings and affidavit filed in support of his § 2255 petition, provided the district court with all that it needed to determine whether it was reasonably probable that Franklin's testimony would have changed the outcome. The evidence of Franklin's guilt was overwhelming, with co-conspirator testimony directly implicating him in the crimes and independent corroborating evidence, including telephone records and taped telephone conversations in which Franklin and a co-defendant discussed the drug smuggling operation." (citing *United States v. Tavares*, 100 F.3d 995, 998–99 (D.C.

Cir. 1996))); *Hernandez v. Jones*, 2017 WL 11485811, at *35 (S.D. Fla. Nov. 29, 2017) (White, Mag. J.) ("In other words, petitioner has not demonstrated here that the outcome of his trial would have been different had he testified as proffered. Therefore, he has not satisfied *Strickland*'s prejudice prong."), *report and recommendation adopted*, 2018 WL 10229913 (S.D. Fla. Jan. 30, 2018) (Marra, J.).

We also agree with the state postconviction court that Ravelo knowingly and intentionally waived his right to testify. Ravelo, recall, claims that his decision not to testify wasn't "knowing and intelligent" because counsel never showed him the late-disclosed "bank statements and the credit card statements." Petition at 15. But, even if this is true, the trial record establishes that Ravelo knew about this evidence *long before* he was asked to decide whether he wanted to testify. So, for instance, on the very first day of the trial, Ravelo's lawyer mentioned these late-disclosed financial records in open court (and in Ravelo's presence). *See* Trial Tr. Vol. 1 [ECF No. 26-2] at 4–5 ("The State, after close of business on Friday, sent me about four to 500 additional pages of credit card records that they had, according to them, inadvertently not turned over. . . . I do not, based on my knowledge of the case at this time, think that they would affect my defense or that they would affect jury selection."). Then, throughout the State's case, Ravelo watched as the prosecution introduced these financial records and painstakingly deployed them to establish his guilt. *See* Trial Tr. Vol. 5 [ECF No. 26-6] at 33–37 (admitting the "voluminous" bank records, credit card statements, and business records showing Ravelo's purchasing history); Trial Tr. Vol. 6 [ECF No. 26-7] at 11–14 (admitting American Express records); *see also supra* § II.A (summarizing the State's financial evidence). Finally, at the close of the State's case, Ravelo—now under oath—told the court *both* that he'd had enough time to talk to his lawyer about his right to testify *and* that, despite knowing all about the State's financial records, he had decided *not* to testify. *See* Trial Tr. Vol. 8 [ECF No. 26-9] at 135 ("[The Court:] Mr. Kawi has said you do not want to testify at trial. Have you had enough time to speak to your attorneys about this decision? Defendant Ravelo: Yes, ma'am. The Court: And it is your decision, that you do not want to testify?

Defendant Ravelo: Yes, ma'am."). We thus have little trouble concluding—as the state postconviction court did—that Ravelo knowingly and intelligently waived his right to testify. *Cf. United States v. Anderson*, 1 F.4th 1244, 1258 (11th Cir. 2021) ("An on-the-record waiver has the potential to nip these post-conviction issues in the bud, eliminating the basis for a claim that the defendant was denied the right to testify or teeing up the issue for the trial court to address on the spot.").

We therefore **DENY** Ground Eight.

## EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Based on everything we've said—and given our reliance on the trial and state-postconviction records—we don't think we'd benefit from any further factual development.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must establish that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). "Jurists of reason" wouldn't find our decision to dismiss Grounds One (in part), Two, Four, and Six debatable. Nor would "reasonable jurists" disagree with our decision to deny the remaining grounds on the merits. We thus **DENY** any request for a COA.

\* \* \*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DISMISSED in part** and **DENIED in part**, that a COA is **DENIED**, that any request for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and that any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida, on April 6, 2023.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     Eduardo C. Ravelo, *pro se*
         counsel of record